# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN HICKEY**, | ) | |
| Plaintiff | ) ) ) | Case No. 13 C 7857 |
| v. | ) ) | |
| **CAROLYN COLVIN** | ) | Magistrate Judge Daniel G. Martin |
| Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Hickey ("Plaintiff" or "Hickey") seeks judicial review of a final decision of Defendant Carolyn Colvin, the Acting Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for disability benefits and supplemental security income benefits for the period of October 5, 2005 through February 28, 2009, and from February 9, 2011 through his last insured date of December 31, 2014. Hickey was found to be disabled during the interim period of March 1, 2009 through February 9, 2011 in a written decision of Administrative Law Judge ("ALJ") Kimberly Cromer. Hickey appealed the ruling to this Court and filed a Motion for Summary Judgment that seeks to reverse the Commissioner's decision.[1] The Commissioner has

---

[1] Hickey cites both the regulatory standards that apply to disability cases and the standard that ordinarily applies under Fed. R. Civ. P. 56. He has also submitted a Statement of Undisputed Facts under Local Rule 56.1. Rule 56 does not apply to this Court's review of the ALJ's decision. "Technically speaking, motions for summary judgment are procedurally improper vehicles for a decision on the merits of this complaint[.]" *Vaile v. Chater*, 916 F. Supp. 821, 823 n. 2 (N.D. Ill. 1996). *See also Scott v. Callahan*, 977 F. Supp. 856, 858 n.3 (N.D. Ill. 1997). They are, of course, routinely filed in cases of this type. However, "the court's review is limited to a determination of whether the record contains substantial evidence to support the agency's decision, and whether the agency applied the proper legal standards." *Vaile*, 916 F. Supp. at 823 n.2.

filed a cross motion.

Hickey experienced a work-related injury in January 2004 that created serious back and leg pain. After years of conservative care, he underwent a L4-L5 fusion for disc herniation in March 2009. Antibiotic treatment was necessary to resolve an ensuing infection. In May 2009, Hickey had a second surgery for a lumbar spinal fusion that included placing hardware into the affected area. This included bi-pedicular screws at L2 and L5, and a cage at the L4-L5 vertebrae. Several epidural injections were given to relieve Hickey's continuing pain. He was also treated with a variety of narcotic pain medications and anti-depressant drugs. On September 6, 2011, a spinal cord stimulator was surgically implanted into his spine.

## **Legal Standard**

In order to qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 4243(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. *See* 20 C.F.R. § 404.1520. The Court omits a description of this well-known standard. When, as here, an ALJ finds that a claimant is disabled for a closed period, while also finding that he experienced medical improvement, the ALJ must follow the eight-step analytic standard set out in 20 C.F.R. § 404.1594. The ALJ must consider whether

2

the claimant:

(1) is engaging in substantial gainful activity;

(2) has an impairment or combination of impairments that meet or equal the severity of a listed impairment;

(3) has experienced medical improvement, as that term is defined in the regulations;

(4) has experienced an increase in his residual functional capacity ("RFC") as a result of the improvement;

(5) has, if no improvement exists, the ability to engage in substantial gainful activity ("SGA");

(6) has current impairments that are severe in combination despite medical improvement;

(7) has the ability and RFC to do his past relevant work; and

(8) has the ability to do other work that constitutes SGA.

The Commissioner bears the burden in a continuing disability case of showing that the claimant has experienced medical improvement such that he can engage in SGA. 20 C.F.R. § 404.1594(b)(5); *Mables v. Sullivan*, 812 F. Supp. 886, 888 (C.D. Ill. 1993) ("The Secretary's burden . . . is to show that medical improvement has taken place and is related to plaintiff's ability to work."); *Stewart v. Astrue*, 2012 WL 2994080, at *2 (N.D. Ill. July 19, 2012) ("[T]he Commissioner bears the evidentiary burden to demonstrate that a disability has ceased."); *see also Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991); *Carter v. Colvin*, 27 F. Supp.3d 1142, 1147 (D. Colo. 2014); *Deronde v. Astrue*, 2013 WL 869489, at *3 (N.D.N.Y. Feb. 11, 2013); *Sturgill v. Astrue*, 2010 WL 715672, at *3 (S.D. Ohio Feb. 23, 2010); *Easly v. Astrue*, 2009 WL 928682, at *3 (D. Or. April 2, 2009); *Vicknair v. Astrue*, 2009 WL 2949764, at *4 (N.D. Tex. Sept. 15, 2009); *Suriel v. Comm. of Soc. Sec.*, 2006 WL 2516429, at *4 (E.D.N.Y. Aug. 29,

2006).

## The ALJ's Decision

The ALJ applied the ususal five-step standard to find that Hickey was not disabled from October 5, 2005 through February 28, 2009. She relied on the same standard to conclude that he then became disabled on March 1, 2009 and continued to be so through February 8, 2011. She found at Step 1 that Hickey had not engaged in SGA during any part of his alleged disability period. The ALJ concluded at Step 2 that he suffered from the severe impairments of "degenerative disc disease with disc herniation at L4-L5 and surgical complications." (R. 15). Relying on the testimony of medical expert Dr. Ashok Jilhewar, the ALJ found that Hickey's impairments met the requirements of listing 1.04 for the period of March 1, 2009 through February 8, 2011. That ended the five-step analysis for this period because the ALJ concluded that Hickey was disabled.

The ALJ did not carefully articulate the eight-step analysis that led her to believe that Hickey stopped being disabled as of February 9, 2011. She did find that Hickey had not engaged in SGA at any point during his alleged disability period. That satisfied Step 1. The ALJ relied on the testimony of Dr. Jilhewar at Step 2 to find that Hickey no longer met or equaled listing 1.04 on February 9, 2011. She concluded at Step 3 that he experienced medical improvement on the same date. Like the listing issue, that was also based on Dr. Jilhewar's testimony, as well as medical reports given by consulting expert Dr. Mahesh Shah and treating physician Dr. Timothy Lubenow.

The rest of the ALJ's decision did not identify the subsequent steps involved in the eight-step analysis for a continuing disability. Nevertheless, she went on to find that Hickey could perform work at the sedentary level as long as several exertional and non-exertional

4

limitations were in place. She also evaluated Hickey's credibility for the post-disability periods, concluding that his statements concerning the severity of his symptoms were not credible. Hickey was unable at Step 7 to perform his past relevant work. The ALJ then relied on the testimony of a vocational expert to find at Step 8 that work existed in the national economy that Hickey could perform. She therefore concluded that Hickey was not disabled as of February 9, 2011.

## **Discussion**

Plaintiff does not provide any argument that challenges the ALJ's finding that he was not disabled prior to March 1, 2009. The Commissioner does not contest her conclusion that Plaintiff was disabled between March 1, 2009 and February 8, 2011. The only relevant issue is whether Hickey's disability ended on February 9, 2011. Unfortunately, both parties fail to make clear distinctions between the different standards that apply in this case. The five-step process is used to decide if a claimant is disabled. The issue of whether he continues to be disabled is governed by the separate eight-step process. *See Spearman v. Comm. of Soc. Sec.*, — F. Supp.3d —, 2015 WL 439284, at *3 (N.D. Miss. Feb. 3, 2015); *Otto v. Colvin*, 2014 WL 1029844, at *2 (C.D. Cal. March 17, 2014). In light of the plain errors in the ALJ's decision, the Court only addresses Step 2, Step 3, and the credibility analysis.

### A. Step 2

The ALJ must decide at Step 2 if a claimant's impairment meets or equals a listing. ALJ Cromer found that Hickey continued to have the same severe impairment that she had identified earlier in the five-step analysis. That was "degenerative disc disease with disc

herniation at L4-L5 and surgical complications." (R. 15, 18). The ALJ's five-step analysis concluded that Hickey's impairment did not meet or equal listing 1.04 prior to March 1, 2009. The listing was met during the period of March 1, 2009 through February 8, 2011. As noted, the ALJ found that Hickey no longer met or equaled the listing as of February 9, 2011 based on Dr. Jilhewar's testimony at the administrative hearing.

Listing 1.04 contains three mutually-exclusive subparts. The ALJ did not identify which of these she thought that Plaintiff met. The Court assumes she meant listing 1.04(A) because that was the only one that Dr. Jilhewar discussed at the hearing. A claimant is presumptively disabled under that listing if he meets or equals the following description:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the caudia equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Hickey must show that his impairment satisfies all of these criteria in order to meet the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Plaintiff's motion, however, fails to identify the listing that is at issue in this case. Instead of addressing listing 1.04(A), Hickey claims in his reply brief that he meets the criteria of listing 1.05(C). That is irrelevant to the ALJ's decision. ALJ Cromer and Dr. Jilhewar only addressed listing 1.04(A). If Hickey thought that the ALJ relied on the incorrect listing in her decision, he was

obligated to raise that point in his motion. Arguments and legal theories raised for the first time in a reply brief are waived. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998); *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010).

Even assuming Plaintiff had identified the correct listing, he has failed to show why the ALJ's decision was erroneous. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 370 (7th Cir. 2004). The ALJ did so by relying on Dr. Jilhewar. An ALJ is entitled to rely on a medical expert's opinion on a listing issue. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Hickey must explain what it was in Dr. Jilhewar's testimony that led the ALJ to an incorrect decision. He can only demonstrate error at Step 2 by showing that he satisfies all of the elements included in listing 1.04(A). *See Fischer v. Barnhart*, 309 F. Supp.2d 1055, 1062 (N.D. Ill. 2004) ("In order to prove his impairment meets listing [1.04(A)], plaintiff must demonstrate that it satisfies the diagnostic description for the listed impairment."); *see also Baker ex rel. Baker v. Barnhart*, 410 F. Supp.2d 757, 760 (E.D. Wis. 2005) ("[T]he claimant must satisfy all of the specific criteria of the particular listing.").

It goes without saying that Hickey cannot satisfy this requirement when he fails to identify any of the criteria set out in listing 1.04(A) and mistakenly relies on listing 1.05(C). His only stated reason is that Dr. Jilhewar and the ALJ overlooked his testimony about the limitations in his activities of daily living ("ADLs") that stem from pain. These restrictions include an inability to sleep through the night, the need for medication, and an unpredictable need to lie down during the day. This is insufficient to show that Plaintiff

7

meets the listing's criteria. Hickey overlooks that listing 1.04(A) does not include any of these symptoms, distressing as they may be. A person can take pain medications, lie down, and be unable to sleep without meeting or equaling listing 1.04(A).

The Court's own review of Dr. Jilhewar's testimony shows that it is not entirely clear. The Court is uncertain, for example, what specific part of listing 1.04(A) the medical expert thought that Hickey did not meet or equal as of February 9, 2011. That said, the burden rests with Plaintiff, not the Court, to show that he meets all of the terms set out in listing 1.04(A). Hickey does not address the relation between what Dr. Jilhewar said and what the listing requires. Nor does he cite any evidence related to the listing's requirements of a nerve root compression, motor loss, sensory or reflex loss, or sitting and supine positive straight-leg raising. Hickey's silence on the listing's specific terms, combined with his mistaken reliance on listing 1.05(C), is insufficient to show that the ALJ's finding requires remand. The Commissioner's motion is granted on the Step 2 claim.

**B.    Step 3**

If a claimant does not meet a listing at Step 2, the ALJ must decide at Step 3 if she has experienced "medical improvement." The regulations define that term as

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(a)(1). The most recent favorable decision is ordinarily the "comparison point decision" ("CPD"). *See Carter*, 27 F. Supp.3d at 1148 n.3 (citing the Program Operations Manual System DI 28020.015(D)(2)).

8

As noted, the Commissioner has the burden of showing that a claimant experienced medical improvement. The Commissioner's only statement on this critical issue is that the ALJ was entitled to rely on Dr. Shah's February 9, 2011 report and a September 15, 2011 treatment note issued by Dr. Timothy Lubenow. Dr. Lubenow saw Plaintiff on that date to follow up on his September 6, 2011 implant of a stimulator into Hickey's spine.

This falls far short of showing that substantial evidence supports the ALJ's finding. Most importantly, neither the Commissioner nor the ALJ has taken proper note of what the regulations require for a showing of medical improvement. An ALJ cannot merely consider whether a claimant's condition is better based on one (or even two) reports that post-date the alleged end of the disability period. That inquiry makes no sense unless the ALJ goes on to address the more difficult question, "better than what?" Common sense makes clear that a claimant's condition improves only if it is seen in relation to something else. The regulations are very specific on this issue. They require an ALJ to consider a claimant's current "improved" condition in relation to "the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(a)(1). This involves a comparison between the time during which the ALJ thinks a claimant is disabled and the period following the alleged medical improvement. Indeed, there would be no basis for finding a decrease in a claimant's symptoms if an ALJ did not take such a comparative view of the record. *See, e.g.*, *Yousif v. Chater*, 901 F. Supp. 1377, 1385 (N.D. Ill. 1995) ("[U]nder the Commissioner's own regulations medical improvement must be based not on a single report as such, but rather on a comparison between the medical report or reports that reflect an allegedly 'improved' claimant and the most recent favorable decision of disability[.]") (citation omitted).

9

The ALJ in this case never engaged in this analysis. She did not identify what the required earlier decision was, or carry out the comparison mandated by the regulations. ALJ Cromer did not even cite the appropriate standard for finding medical improvement in her boilerplate recitation of Step 3's requirements. (R. 14). The only reasonable conclusion from her oversight is that the ALJ did not follow the proper standard in her analysis. That amounts to legal error. Remand is required when a court cannot determine from the face of an ALJ's opinion that she complied with the factors required for finding medical improvement. *Vicknair*, 2009 WL 2949764, at *7; *see also Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997) ("[I]f the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings."); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997); *Simms v. Astrue*, 599 F. Supp.2d 988, 997 (N.D. Ind. 2009).

The Commissioner makes the same mistake. The government does not account for the regulation's language, does not identify the most recent favorable opinion, and does not compare the findings of Dr. Shah and Dr. Lubenow to any of the medical reports that were issued during the disability period of March 1, 2009 and February 8, 2011. This fails to show that substantial evidence supports the ALJ's finding that Hickey experienced medical improvement.

Even if she had noted the proper legal standard, the ALJ's stated reasons for finding that Hickey experienced medical improvement raise serious concerns about the extent to which she was familiar with the record. She correctly said that Dr. Shah had found that Hickey was suffering from "severe low back pain with marked limitation of range of motion" at the February 9, 2011 exam. (R. 19). That is not a basis for finding improvement,

10

however, without comparing it to even *more* severe pain and limitations that existed before February 9. The ALJ did not do so. She claimed instead that Plaintiff's condition was better because Dr. Shah thought that Hickey had a normal gait. (R. 18). A normal gait is only an improvement if Hickey previously had a non-normal one. The ALJ did not cite anything to that effect in her decision.

Had she accounted for the record, the ALJ would have discovered that Dr. Zelby stated in April 2010 that Hickey's gait was normal. (R. 577). That, of course, undermines any finding that Hickey experienced medical improvement based on a normal gait as of February 9, 2011. Even worse, pain management specialist Dr. Lipov stated in March 2011 – after Hickey was no longer disabled – that his gait was antalgic. (R. 885). An antalgic gait involves "a limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side." http://www.footvitals.com/health/antalgic-gait.html. The Commissioner tries to rescue the ALJ's decision by pointing out that Dr. Shah also found that Hickey was able to heel-walk and toe-walk. But Hickey could do that during his closed disability period. (R. 623). The Commissioner also notes that Dr. Shah found that Hickey had normal motor strength. That also fails to show improvement because Dr. Zelby reached a similar conclusion while he was disabled. (R. 577).

The ALJ thought that Dr. Shah had also concluded that Hickey had an "excellent lumbar spine." That is simply incorrect. It is difficult to imagine why Dr. Shah would have made such a statement when he found that Hickey continued to suffer from severe low back pain. Many of Dr. Shah's specific findings actually show that Hickey experienced no improvement or, in some cases, regressed from measurements made during his disability

11

period. He noted, for example, that Hickey's back flexion was 45 degrees. That was the same as on November 30, 2009. (R. 633). Hickey's spine extension was 5 degrees on February 9, 2011. But it was twice that only one month earlier when the ALJ considered him to be disabled. (R. 840). Had the ALJ noted Dr. Shah's findings on positive leg raising (which indicates low back pain resulting from disc herniation), she would have been required to explain why Dr. Shah's numbers showed more problematic results than Hickey displayed at times during his disability period. (R. 505, 848).

The ALJ's reliance on Dr. Lubenow's September 15, 2011 treatment note is equally troubling. Dr. Lubenow implanted a spine stimulator in Hickey on September 6, 2011. The record for that procedure is not in the administrative record. The follow-up note says nothing at all about a comparison between Hickey's condition on that date and the disability period prior to February 9, 2011. Dr. Lubenow merely stated that Hickey was doing "very well" on the stimulator. (R. 930). That does not imply a comparison to anything. Even if it did, there is no reason to believe the comment was intended to compare Hickey's current condition to something other than his symptoms just prior to the spine implant on September 6. The ALJ was obligated to discuss her reasons if she thought otherwise. That would have required her to explain why Hickey would even need a spine implant on September 6, 2011 to gain pain relief if he had, in fact, experienced medical improvement seven months earlier on February 9. A reasonable inference from the procedure is that Hickey suffered a worsening of his symptoms.

A comparison between Dr. Lubenow's report and other evidence strongly suggests that Hickey's alleged "improvement" was far less significant than the ALJ sated. She relied on the fact that Dr. Lubenow said that Hickey was taking fewer medications due to the

stimulator. Dr. Lubenow stated that Hickey was "only" taking two Norco tablets daily, together with Effexor and a third medication. (R. 930). This does not imply any comparison with Hickey's medication prior to February 9, 2011. The record actually shows that Plaintiff was taking *more* pain pills when he saw Dr. Lubenow than he had taken at some points during the disability period. He was only taking one Norco each day in November 2010. (R. 623). Just prior to his improvement date of February 9, 2011, Hickey was taking Elavil with no mention of Norco at all. (R. 840). Contrary to the ALJ's claim, the fact that Hickey took two Norcos when he saw Dr. Lubenow suggests a worsening of his condition. Post-disability evidence reinforces that suggestion. Hickey told the ALJ at the hearing that he was taking three Norcos every day. (R. 51). The ALJ did not account for any of this evidence in her assessment of Dr. Lubenow's report.

Equally serious, the ALJ overlooked the post-disability notes of Hickey's treating surgeon Dr. Michael Zindrick. In one of the last favorable reports during the disability period, Dr. Zindrick said on January 4, 2011 that Hickey has "chronic, ongoing, left leg pain." "His symptoms range between a 4-8, worse with any activities, standing and walking. In fact, he has basically cut back on his walking." (R. 897). In April and May 2011, Dr. Zendrick noted that Hickey continued to have the same radiculopathy pain that he experienced during his disability period. Hickey told the doctor that his pain increases at times such that he needs to use a walker. The ALJ was required to note this series of reports that were not entirely consistent with her conclusions. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted). ALJ Cromer erroneously

13

overlooked this line of post-improvement evidence that did not comport with her conclusion.

The ALJ's failure to account for the legal standard, or even the basic facts included in the record, make her decision erroneous on its face. Plaintiff's motion is granted on the Step 3 issue.

### C. Remaining Issues

The ALJ continued her analysis to include an RFC assessment of sedentary work after February 9, 2011. Numerous exertional and non-exertional restrictions were included. The ALJ also assessed Hickey's credibility for the post-disability period as part of that analysis. Relying on language that has been consistently characterized by courts as meaningless, she concluded that Plaintiff's allegations concerning the severity of his symptoms after February 9, 2011 were not credible "to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (R. 20). *See*, *e.g.*, *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("It is not only boilerplate; it is meaningless boilerplate."). The ALJ then went on to cite reasons that do not support her credibility finding.

Hickey told the ALJ that his medications made him drowsy and tired. ALJ Cromer did not find that persuasive because she thought that the record did not support his claim. The opposite is true. Hickey repeatedly complained about the side effects of his medications. He told Dr. Zindrick on April 18, 2011 that Elavil made him tired and "out of it." Pain specialist Dr. Lipov reduced the Elavil dosage for that reason. Dr. Zindrick's examination showed that Hickey was "quite fatigued." (R. 926, 927). He told Dr. Zindrick on May 18 that he was "extremely fatigued" and could barely stay awake some days. (R.

14

924). Dr. Lipov prescribed Cymbalta to help control Plaintiff's pain, but that medication made Hickey "way too tired." (R. 923). He told Dr. Lipov on February 8, 2011 that his medications caused low energy. (R. 881). He repeated that complaint on March 8, 2011. (R. 884).

The ALJ should have been aware that drowsiness and tiredness would not be unexpected in light of Hickey's potent medications. The ALJ's decision noted that he took three Norcos daily, plus a muscle relaxer. Dr. Zindrick identified the relaxant as Flexeril. (R. 922). Leading side effects of Flexeril are drowsiness and tiredness. http://www.rxlist.com/flexeril-side-effects-drug-center.html. The same is true of Norco. http://www.rxlist.com/norco-side-effects-drug-center.html. He was also taking a variety of anti-depressant medications, several of which were prescribed for pain relief. One was Elavil. That causes drowsiness. http://www.rxlist.com/elavil-side-effects-drug-center.html. So does Cymbalta. http://www.rxlist.com/cymbalta-side-effects-drug-center.html. In fact, it would be surprising if an individual taking combinations of these drugs would not experience the fatigue that Hickey repeatedly complained about to his doctors.

The ALJ also discounted Hickey's credibility because she thought that no doctor stated that he could not work. As before, this erroneously overlooks the record. Dr. Zindrick stated numerous times that Plaintiff could not work. (R. 893, 896, 897). The Commissioner claims that is not important because Dr. Zindrick only meant that Hickey could not return to his prior level of work, which was more strenuous than the ALJ's sedentary RFC. The record refutes that position. On January 4, 2011, Dr. Zindrick stated that Plaintiff was "not capable of returning to his previous level of employment and, at best, at some point, hopefully we can get him to a light, sedentary level." (R. 897). Dr. Zindrick

obviously meant that Hickey could not currently do his former work *or* the kind of sedentary work that the ALJ later included in the RFC. Sedentary work was only a future goal that Hickey might "hopefully" be able to achieve. Dr. Zindrick indicated that day never arrived by stating twice more that Hickey could not work.

The ALJ also thought that Dr. Lubenow's September 2011 note showed that Hickey was "essentially normal." The Court is unable to follow the basis of this counterintuitive claim. Dr. Lubenow never said that Plaintiff was normal. If the ALJ thought his note could be construed to mean that, she was required to explain how her conclusion was consistent with the fact that Dr. Lubenow had just surgically implanted a stimulator in Hickey's spine; why Dr. Lubenow noted that he was experiencing neuropathic pain; why physical therapy was prescribed; or why the doctor noted (and prescribed) medications to control his ongoing pain. A common sense interpretation of the treatment note is that Hickey was doing well in light of his serious condition. That is not the same as reaching the conclusion that ALJ Cromer stated. As discussed throughout this decision, other evidence that post-dated the end of Hickey's disability period strongly suggests that was not "essentially normal."

The ALJ further discounted Hickey's credibility because she thought that he had stated in February 2011 that he was "doing much better." This is without merit. The ALJ was presumably referring to Dr. Shah's February 9, 2011 report. Hickey never said what the ALJ attributed to him. He told Dr. Shah that he had "severe low back pain with radiation of pain to the left lower extremity." (R. 846). Dr. Shah essentially agreed by concluding that Hickey experienced "severe low back pain with marked limitation of range of motion." (R. 849). Hickey did tell Dr. Shah that his back pain was better, but that his

16

radiculopathy continued and prevented him from doing any exertional activities. (R. 846). However, that did not make Hickey less credible. He told Dr. Zindrick almost the same things in 2010 when he was supposed to be disabled. (R. 624, 627). If the ALJ thought that Hickey's statement made him unbelievable in February 2011, then she was required to explain why the same comments did not make him unbelievable in 2010.

The ALJ was also troubled by Hickey's claim at the hearing that he needed to use a cane. She took issue with that comment by noting that Dr. Shah stated that Plaintiff did not need an assistive device at the examination. As so often in this case, the ALJ again failed to account for what Hickey actually said. He never told the ALJ that he used a cane on a regular basis. He remarked that he only needed it for approximately six days a month. (R. 57, "I frequently use a cane when I have, when I know I have to be at a party or I got to go somewhere where I have no control over."). The fact that Hickey did not need a cane during his consultation with Dr. Shah is entirely consistent with this testimony.

Finally, the record contains considerable evidence related to Hickey's claim that he suffered from depression. Hickey told the ALJ that his medications were not effective for depression. (R. 52). The SSA's own consulting expert Dr. Herman Langner diagnosed dysthymia. He assessed a GAF score of 50 for Plaintiff. (R. 844). *See Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that [a claimant] was mentally capable of sustaining work."). Psychologist Dr. Tyrone Hollerauer then issued a Psychiatric Review Technique that found Hickey to be suffering from a non-severe dysthymic disorder.

The ALJ stated at the hearing that it "will be my under my purview to assess the

depression" because Dr. Jilhewar was not an expert in psychology. (R. 40). In reality, she overlooked the issue and all of the evidence related to it entirely. The issue was particularly important because it concerns more than Hickey's credibility. Even if the ALJ did not think that Hickey's depression was severe, she was obligated to consider it as part of her RFC assessment. The regulations require an ALJ to consider the combined effects of all impairments, "even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2010). "An ALJ's failure to fully consider the impact of non-severe impairments requires reversal." *Alesia v. Astrue*, 789 F. Supp.2d 921, 933 (N.D. 2011) (internal quotes and citation omitted).

## Conclusion

Plaintiff John Hickey's Motion for Summary Judgment [23] and the Commissioner's Motion for Summary Judgment [34] are both granted in part and denied in part. The Commissioner's decision is reversed and remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

ENTERED:

_____
DANIEL G. MARTIN
United States Magistrate Judge

Dated: June 25, 2015.